1  *Name:*  Russell Rope #1607

2  *Address:*  PO Box 1198

3  Sacramento, CA 95812

4  *Phone:*  (818) 400-5592

5  Plaintiff In Pro Per

6

7  ## UNITED STATES DISTRICT COURT

8  ## CENTRAL DISTRICT OF CALIFORNIA

9  LA CV14 04900— (VBK)

10  Russell Rope                    ,  )  Case No.: _____

11  **PLAINTIFF,**                  )

12  **vs.**                         )  **Civil Rights Complaint Pursuant To**

13  Facebook, Inc.                  )  **42 U.S.C. § 1983**

14  Google, Inc.,                   )  _____

15  Apple, Inc.,                    )

16  Twitter, Inc.,                  )  _____

17  and John Does 1 to 10           )

18  **DEFENDANT(S).**               )

19

20

21  ## I. JURISDICTION

22  1. This Court has jurisdiction under 28 U,S,C, § 1331 & 28 U.S.C. § 1343.

23  Federal question jurisdiction arises pursuant to 42 U.S.C. § 1983.

24  _____

25  _____

26  _____

27  _____

28  _____

2014 JUN 24  PM 1:02

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

LODGED

## II. VENUE

2.  Venue is proper pursuant to 28 U.S.C. § 1391 and locations of the defendants are possibly in multiple states and unknown locations, which fall under jurisdiction of this court; and because this is the district where the plaintinff both lives and was located during the violations of the plaintiff's rights.

## III. PARTIES

3. Plaintiff's name is _____ Russell Rope _____. Plaintiff resides at: address protected by Safe at Home program (C.G.C. 6205-6210) within the county of Los Angeles

4. Defendant Facebook, Inc. is located in Menlo Park, CA

5. Defendant Apple, Inc. is located in Cupertino, CA

6. Defendant Google, Inc. is located in Mountain View, CA

7. Defendant Twitter, Inc. is located in San Francisco, CA

8. Defendant John Does 1 to 10 locations range from local to plaintiff to scattered across the United States of America and posssibly international.

9. Defendant John Does plus additional suspected conspirators are listed in attached exhibits and located in proximity to plaintiff and beyond.

# IV. <u>STATEMENT OF FACTS</u>

10. Plaintiff is a brilliant and innovative entrepreneur with traditional credentials plus nearly twenty years of professional experience in the fields of technology, arts, and media.  Plaintiff grew up an elite ethical hacker investing most of his time and all of his money into electronics, computers, information technology, and media arts.  The following honest statements come directly from a professional expert of a witness slash victim in pro per:

11. Defendants are primarily known hackers accused of much more than maliciously hacking the plaintiff for at least seven years.

12. Defendants are literally terrorizing the plaintiff in their conspiracy to sabotage and control both business and personal life through incessant and illegal actions not limited to espionage, fraud, defamation, theft, harassment, stalking, threats, physical assault, and obstruction of justice.

13. Defendants are causing irreparable damages to the plaintiff in their killing of business, relationships, income, communications, time, and liberty.  Plaintiff has personally suffered much stress and anxiety as a direct result of defendants, which have lead to new health issues and exacerbation of preexisting conditions.  Defendants are intentionally bleeding the plaintiff to death by a thousand cuts in the back while forcing him to watch as others abduct and rape his pioneering claims.  Defendants' unwarranted actions are like a customized form of terroristic torture, which have been preventing the plaintiff from achieving what he has devoted a lifetime of both education and hard work.

14. John Doe 1 and John Doe 2 are most probably responsible for and/or enabled additional John Does and additional suspects.

15. A list of suspected John Does is attached hereto as Exhibit "1" and by this reference made a part hereof.

16. Bad Karma Foundation (not an actual organization) accounts for several groups of suspected conspirators who have violated the plaintiff not only in attempts to steal, sabotage, and control business, but they have also gone so low as to interfere with personal relations. Listed as suspects rather than defendants or John Does for reasons of safety, security, and not to give underserved credits, but referenced so the court is prepared for additional foreseen problems and requests for relief.

17. A list of suspected Bad Karma Foundation conspirators as indicated by instinct, supported by evidence, and mostly deserving of no less than injunctions is attached hereto as Exhibit "2" and by this reference made a part hereof.

18. All defendants can legally be held accountable for all crimes, torts, and causes of actions based on conspiracy. Plaintiff seeks retribution based on defendants' levels of responsibility.

19. This is the third of three individual cases, all suspected of similar conspiracy, which are undoubtably connected at some level, yet distinct enough to require separate filing, cases, and judgements. Cases filed in reverse order for security and pro se experience.

20.  Government is accused of having fallen victim to playing part in this conspiracy, but level of involvement is not responsible for these complaints, less damaging, and worthy of plaintiff seeking relief from the first separately filed case.  (#CV14-04002)

21.  Domain Name in Dispute is accused of having fallen victim to playing part in this conspiracy, but level of involvement is not responsible for most of these complaints, less damaging, and worthy of plaintiff seeking relief from the second separately filed case.  (#CV14-04232)

22.  Defendants' original motives were probably social turned financial supported by bad moral justification most probably based on a socioeconomic perversion and exaggeration of misunderstood and private personal facts turned fraudulent conspiracy resulting in serious damages to the plaintiff and empowerment of a chain of fools committing further errors in judgement by trying to cover it all up and perpetuating problems including a disturbing obstruction of justice.

23.  Reported violations are currently ongoing despite numerous requests for help from nearly all branches of law enforcement including: Los Angeles County Sheriffs incident #GTA-236 or #TAG-236, ic3.gov, FBI, SS, CIA, FCC, FTC, DA/High Tech Crime Division, attorneys and referral services, politicians including governor, congressman, senator, president, and the perpetrators themselves.  Plaintiff suspects both sheriff and congressman retirements have something to do with their involvement in this conspiracy.  Plaintiff went as far as to give defendants and their affiliates opportunities to end the lies and join what they were fighting; in the form of collaboration and investment opportunities, which would not be necessary had defendants not been causing problems.

24.  Plaintiff is the true original genius responsible for this testimony in pro per offensive defense.  Plaintiff has clear and convincing evidence, which supports all claims against both the defendants and most suspects, including evidence of both authenticity of evidence and damages endured as a result of defendants.

25.  Defendants are accused of conspiracy based on similarly repetitive attacks, which the plaintiff has both endured and repelled for years.  Some defendants have enabled other defendants including a chain of fools not limited to both known and unknown John Does and copycats.

26.  Defendants are accused of more than attempting to defame and frame the plaintiff's character as a method of immoral justification.

27.  Not only have defendants obstructed justice in terms of seeking legal representation and proper assistance from the authorities, but defendants have also interfered with the health care process, thus exacerbating health issues, which this conspiracy may have played part in creating.

28.  Defendants have attacked the plaintiff in almost every way possible and in more ways than one person could have imagined or executed on their own.  Defendants and suspects have broken almost every rule in the written and unwritten books with complete disregard for the law.

29.  Plaintiff was and still is being violated and victimized by the following specific actions conducted by defendants and conspirators:

30.  First defendant, Facebook, Inc., from plaintiff perspective, is the root of all evil when it comes to this case.

31.  Indisputable Actions by Facebook: (1) Disabling of personal account multiple times and termination of business/fan page, (2) Disabling of advertising and suggest/invite fan page features, (3) Threatening, harassing, insulting number, name, and word hacks, (4) Interference with private messages, instant messaging, and friend requests, (5) Interference with smart phone connectivity, news feed, and likes, (6) Sabotaging of events (invites), (7) Advertising former clients and enabling competitors via above stated actions (8) This partial list is limited to what is indisputable based on supporting evidence.

32.  Evidence of defendant Facebook disabling personal account, fan/business pages, and advertising interference is attached hereto as Exhibit "3" and by this reference made a part hereof.

33.  Facebook allegedly disabled the plaintiff's account multiple times because he was "adding friends," which he was doing selectively and mostly for networking purposes; well within Facebook's original terms of service.  Plaintiff alleges that he was singled out by haters who put social pressure on an immature company that inevitably followed the plaintiff's suggestions for upgrading.

34.  Evidence of defendant Facebook repetitively harassing/threatening the plaintiff with number hacks is attached hereto as Exhibit "4" and by this reference made a part hereof.

35.  Defendant Instagram, owned by Facebook, and other social web apps followed the leader off the bridge and are doing the same stuff within capabilities.

36.  Indisputable Actions by Instagram: (1) Disabling of hash tags, (2) Interference with likes, (3) Interference with followers, (4) Name and number hacks, (5) Feed hacks, (6) Service attacks and app shutdown hacks during use, (7) Conspiracy to enable both fraudulent and unfair competition.

37.  Evidence of defendant Instagram maliciously hacking and harassing the plaintiff is attached hereto as Exhibit "5" and by this reference made a part hereof.

38.  Defendant Google Inc., including but not limited to YouTube, Google Plus, and AdSense also joined in with both similar and different attacks that took a while to become recognizable as an obvious conspiracy.

39.  Google/YouTube is also accused of actions including: (1) Termination of YouTube Business Account, (2) Sabotaging Personal YouTube Account and AdSense, (3) YouTube Interfering with Tags, Search, and View Counts, (4) Suspected Google Search Interference, (5) Google Plus Sabotage (Name and Number Hacks), etc.

40.  Evidence of defendant Google maliciously hacking and harassing the plaintiff is attached hereto as Exhibit "6" and by this reference made a part hereof.

41.  Defendant Twitter Inc., and all other defendants are accused of name and number hacks including cryptic message harassment such as modifying modifying URLs or hyper links in tweets to form harassing messages like http://twit.us/iAMguna187u. Additionally, Twitter and other social platform operating defendants are accused of interfering with plaintiff's ability to connect with other users.

42.  Evidence of defendant Twitter maliciously hacking and harassing the plaintiff is attached hereto as Exhibit "7" and by this reference made a part hereof.

43.  Defendant Apple, Inc. could have been involved as long as Facebook. Apple is both directly causing problems and is as guilty as every social web app/hack on iTunes.  Apple, their API, and iTunes gatekeepers are undoubtably enabling some of the defendants and their corresponding criminal actions.

44.  Apple is also accused of: (1) Interfering with smart phone service and connectivity, (2) Blocking use of apps and shutting apps down during use, (3) Apps: notification and message hacks, (4) Blue tooth mouse and keyboard hacks (5) Remote access screen watching or enabling screen watchers on all devices, (6) Somehow responsible for smart phone GPS being used to stalk plaintiff in person, (7) Fraudulently misrepresenting facts in their lying and trying to cover it up.

45.  Evidence of defendant Apple maliciously hacking and harassing the plaintiff is attached hereto as Exhibit "8" and by this reference made a part hereof.

46.  It is obvious that defendants and John Does are conspiring based on similarities mostly in use of plaintiff's personal and private information in the name, number, and harass hacks, both on the social web and in person.

47.  Evidence of malicious and harassing number hacks related to people is attached hereto as Exhibit "9" and by this reference made a part hereof.

48.  Evidence of malicious and harassing name hacks related to people is attached hereto as Exhibit "10" and by this reference made a part hereof.

49.  Defendants and John Does are more than sexually harassing plaintiff by interfering with all online dating activity and trying to cast and control the people in plaintiff's life through control of events.  Defendants are also using GPS and interference with messaging and/or phone communications to control people and relationships. Additionally, defendants are suspected of collecting video surveillance footage and private messages because they are sick people who think they can capitalize on relation to the plaintiff in the event of error and/or tragedy, which they have certainly at least tried to cause or lure the plaintiff into on several occasions.

50.  Defendants are also using the aforementioned tactics to interfere with business and relationships not only with prospective attorneys and law enforcement, which has been a major contribution to the obstruction of justice complaint, but also with both prospective and former clients, inventors, family, friends, fans, etc.

51.  Defendants and John Does are using slander, libel, complete exaggerations, and suspected bribes to frame plaintiff's character in their corruption of relationships including turning law enforcement and other authorities against the plaintiff in attempt at rendering the plaintiff defenseless.

52.  John Does most probably include law enforcement who have attempted to entrap an innocent plaintiff as well as others who simply did not do their job or interfered with others doing their jobs.  Evidence exists, which links John Does, law enforcement, other government, and defendants based on indisputable similarities between violations and reported conspiracy.

53.  John Does, MySpace, and Superb Internet are suspected of conspiring to trade advertising and possibly more for access to plaintiff's personal and business web and email hosting.

54.  Evidence of suspect Superb maliciously hacking and harassing the plaintiff is attached hereto as Exhibit "11" and by this reference made a part hereof.  Further evidence suggests conspiracy related name and number hacks in communications with technical support.

55.  Defendants and John Does are enabling each other while disabling and damaging the plaintiff, and in so doing have made the plaintiff a target for cheap shots designed to further empower inferiority.

56.  Additional Problems, Suspicions, and Accusations (some evidence limited to plaintiff testimony): (1) Google Maps/iPhone Hack, (2) Car Accident Theory in SD and SF, (3) Freeway Traffic and Attempted Phone/Accident Entrapment, (4) Car Computer Hack False System Malfunction Errors, (5) Car Window Regulator and Battery Attacks, (6) Pharmacy and Doctor Office Harassment, (7) Health Insurance Denied for Bullshit, (8) Gov./DPSS Number Hacks, (9) Surveillance Cameras, (10) Spam Phone Calls and Emails, (11) Feed Programming Hacks, (12) License Plate Stalking Hacks, (13) Stalking at the Courthouse, (14) Parking Pigs Hack, (15) Domain Name Dispute and Related Crimes, (16) Third Party iPhone Spies, (17) Screen Watching/Broadcasting, (18) Casting Hacks, (19) Email Newsletter Service Hacks, (20) Food, Gas Station, and Entertainment Hacks, (21) etc.

57. Defendant Facebook started these problems.  Defendant Apple has probably caused as many problems as Facebook and for the same amount of time. John Does are probably responsible for putting pressure on defendants to start and perpetuate these violations, but defendants had and abused the power to process actions responsible for causing the problems for the plaintiff.  Mark Zuckerberg and Tim Cook must have played some part in this conspiracy based on their positions and a every attempt possible made in connecting with defendants in effort of resolving these issues.

58. Plaintiff believes true databases queries and phone records can provide access to any missing evidence or connections, which can be useful for incrimination of all defendants and John Does.  Plaintiff plans to subpoena data.

59. Some attached evidence has been slightly modified with originals in tact. Edits are mostly limited to cropping and highlighting of violations.  Much more evidence including photos, videos, emails, and possible testimonies.  Plaintiff literally has 4,000+ more pieces/files of evidence, each accounting for separate, but related instances, counts and infractions.  Few screen shots used as examples in exhibits may have been natural errors, but help prove a point, which may be hard to see.  Some sequential screen shots exist for purpose of clearly demonstrating actions and violations of defendants.  Many sequential and time stamped screen shots also show how seemingly common appearing errors are misdirections.

60. Evidence of more and well organized evidence in form of original image/video files and screen shots/video (not including trail of emails, audio recordings and written docs) is attached hereto as both Exhibit "12" and Exhibit "13" and by this reference made a part hereof.

61.  Evidence of Damages Includes: (1) Visible scarring to more than the plaintiff's face, (2) Physician, witness, and professional testimony, (3) Bank account records easily verified via smart phone, (4) Resume/portfolio and obvious arrested development, (5) Analysis of messages, emails, web stats, and docs, (6) Analysis of competition success and suspect activity, (7) General social analysis, (8) Witnesses to multiple physical assaults, (9) Telephone record proof of declining to toxic and tainted relationships (10) Time is irreplaceable

62.  This document is filed under seal and copyrighted.  Plaintiff retains all intellectual property rights.

63.  A pie chart displaying the plaintiff's perception of defendant levels of responsibility is attached hereto as Exhibit "14" and by this reference made a part hereof.

64.  Plaintiff is arguably more intelligent and talented than all defendants and suspects combined.

65.  In addition to moving forward with productions as planned, Plaintiff will become a dedicated 'philanthropreneur' funding and employing others while making charitable donations of up to 90% of monetary relief awarded should he win in full.

66.  Plaintiff declares that all statements in this complaint are real and true.

67.  Plaintiff hopes legal action will result in peace and relief as requested.

68.  Plaintiff respectfully and humbly demands justice.  Please and thanks.

## V. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
Fraud: In Connection with Computers, By Wire, Theft

**(As against Defendant(s):** Facebook, Inc., Apple, Inc., Google, Inc., Twitter, Inc., and John Does 1 to 10

69. Plaintiff refers to and incorporates paragraphs 1 through 68, inclusive, as though fully set forth herein, hereat, verbatim.

70. Defendants are using more than unauthorized computer access in conspiracy to defraud the plaintiff.

71. 18 U.S.C. § 1030, also known as the National Information Infrastructure Protection Act of 1996, makes it illegal to commit fraud and related activity in connection with computers.

72. Defendants are using several forms communications fraud to violate the plaintiff's rights.

73. 18 USC § 1343 makes it illegal to commit fraud by wire, radio, or television.

## SECOND CAUSE OF ACTION

( Fraud: Intentional/Negligent Misrepresentation, Deceit, Concealment )

**(As against Defendant(s):** Facebook, Inc., Apple, Inc., Google, Inc., Twitter, Inc., and John Does 1 to 10 )

74. Plaintiff refers to and incorporates paragraphs 1 through 73, inclusive, as though fully set forth herein, hereat, verbatim.

75. Defendants have made many misrepresentations in their falsifying of various numbers and stats used in fraudulent, harassing, and threatening hacks. They have also concealed and suppressed other relevant information including anything related to seeking help in ending the hacks. This must also be deceitfully related to additional interference with important statistics, which the plaintiff must keep up and constantly analyze for vital business functions.

76. 18 U.S.C. § 1001 "(a) Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully-- (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact"

77. California Civil Code Section 1710 - Deceit "(3) The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact;"

78.  Plaintiff also brings this cause of action pursuant to the following: (a.) CAL. CIV. CODE Section 3294, which makes it unlawful to misrepresent, deceit, or conceal material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury. (b.)  CAL. CIV. CODE Section 3294, which also says that an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of fraud, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.

79.  FRAUD and DECEIT - INTENTIONAL MISREPRESENTATION: "Fraud" and "deceit" are defined in Civil Code sections 1572, 1709, and 1710. Courts appear to refer to the terms interchangeably, though technically "fraud" applies to only contract actions.

80.  FRAUD and DECEIT - INTENTIONAL MISREPRESENTATION: Civil Code section 1709 defines "deceit" generally: "One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers."

81.  FRAUD and DECEIT - INTENTIONAL MISREPRESENTATION: Civil Code section 1572, dealing specifically with fraud in the making of contracts, restates these definitions in slightly differing language, with the addition of a fifth kind of deceit, described generally as "[a]ny other act fitted to deceive." Fraud in the context of contract formation is covered by other instructions.

1    82.  FRAUD and DECEIT - INTENTIONAL MISREPRESENTATION: The

2    tort of deceit or fraud requires: " '(a) misrepresentation (false representation,

3    concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent

4    to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting

5    damage.' " (Engalla v. Permanente Medical Group, Inc. (1997) 15 Cal.4th 951,

6    974 [64 Cal.Rptr.2d 843, 938 P.2d 903], internal quotation marks omitted; see also

7    Molko v. Holy Spirit Ass'n (1988) 46 Cal.3d 1092, 1108 [252 Cal.Rptr. 122, 762

8    P.2d 46].)

9

10    83.  FRAUD and DECEIT - INTENTIONAL MISREPRESENTATION:

11    Sometimes this tort is stated with four elements instead of five: "(1) a knowingly

12    false representation by the defendant; (2) an intent to deceive or induce reliance;

13    (3) justifiable reliance by the plaintiff; and (4) resulting damages." (Service by

14    Medallion, Inc. v. Clorox Co. (1996) 44 Cal.App.4th 1807, 1816 [52 Cal.Rptr.2d

15    650].)

16

17    84.  FRAUD and DECEIT - INTENTIONAL MISREPRESENTATION: The

18    representation must ordinarily be an affirmation of fact, as opposed to an opinion.

19    Under the Restatement Second of Torts section 538A, a representation is an

20    opinion "if it expresses only (a) the belief of the maker, without certainty, as to the

21    existence of a fact; or (b) his judgment as to quality, value, authenticity, or other

22    matters of judgment." Opinions are addressed in CACI No. 1904, Opinions as

23    Statements of Fact.

24

25

26

27

28

85.  FRAUD and DECEIT - INTENTIONAL MISREPRESENTATION:

"Fraud is an intentional tort; it is the element of fraudulent intent, or intent to deceive, that distinguishes it from actionable negligent misrepresentation and from nonactionable innocent misrepresentation. It is the element of intent which makes fraud actionable, irrespective of any contractual or fiduciary duty one party might owe to the other." (City of Atascadero v. Merrill Lynch, Pierce, Fenner and Smith (1998) 68 Cal.App.4th 445, 482 [80 Cal.Rptr.2d 329], internal citations omitted.)

86.  FRAUD and DECEIT - INTENTIONAL MISREPRESENTATION: "A misrepresentation need not be oral; it may be implied by conduct." (Thrifty-Tel, Inc. v. Bezenek (1996) 46 Cal.App.4th 1559, 1567 [54 Cal.Rptr.2d 468], internal citations omitted.)

87.  FRAUD and DECEIT - INTENTIONAL MISREPRESENTATION: "'[F]alse representations made recklessly and without regard for their truth in order to induce action by another are the equivalent of misrepresentations knowingly and intentionally uttered.'" (Engalla, supra, 15 Cal.4th at p. 974, quoting Yellow Creek Logging Corp. v. Dare (1963) 216 Cal.App.2d 50, 55 [30 Cal.Rptr. 629].)

88.  FRAUD and DECEIT - INTENTIONAL MISREPRESENTATION: "Justifiable reliance is an essential element of a claim for fraudulent misrepresentation, and the reasonableness of the reliance is ordinarily a question of fact." (Guido v. Koopman (1991) 1 Cal.App.4th 837, 843 [2 Cal.Rptr.2d 437] internal citations omitted.)

89.   FRAUD and DECEIT - INTENTIONAL MISREPRESENTATION:
"Actual reliance occurs when a misrepresentation is " 'an immediate cause of [a
plaintiff's] conduct, which alters his legal relations,' " and when, absent such
representation, " 'he would not, in all reasonable probability, have entered into the
contract or other transaction.' " 'It is not . . . necessary that [a plaintiff's] reliance
upon the truth of the fraudulent misrepresentation be the sole or even the
predominant or decisive factor in influencing his conduct... It is enough that the
representation has played a substantial part, and so has been a substantial factor, in
influencing his decision.' " (Engalla, supra, 15 Cal.4th at pp. 976—977, internal
citations omitted.)

90.   FRAUD and DECEIT - INTENTIONAL MISREPRESENTATION: "A
'complete causal relationship' between the fraud or deceit and the plaintiff's
damages is required... Causation requires proof that the defendant's conduct was
a " 'substantial factor' " in bringing about the harm to the plaintiff." (Williams v.
Wraxall (1995) 33 Cal.App.4th 120, 132 [39 Cal.Rptr.2d 658], internal citations
omitted.)

91.   FRAUD and DECEIT - INTENTIONAL MISREPRESENTATION: "In
order to recover for fraud, as in any other tort, the plaintiff must plead and prove
the 'detriment proximately caused' by the defendant's tortious conduct. Deception
without resulting loss is not actionable fraud." (Service by Medallion, Inc., supra,
44 Cal.App.4th at p. 1818, internal citations omitted.)

92.   FRAUD and DECEIT - NEGLIGENT MISREPRESENTATION:

"Negligent misrepresentation is a separate and distinct tort, a species of the tort of deceit. 'Where the defendant makes false statements, honestly believing that they are true, but without reasonable ground for such belief, he may be liable for negligent misrepresentation, a form of deceit.' " (Bily, supra, 3 Cal.4th at pp. 407, internal citations omitted.)

93.   FRAUD and DECEIT - NEGLIGENT MISREPRESENTATION:

"Negligent misrepresentation is a form of deceit, the elements of which consist of (1) a misrepresentation of a past or existing material fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed, and (5) damages." (Fox v. Pollack (1986) 181 Cal.App.3d 954, 962 [226 Cal.Rptr. 532], internal citation omitted.)

94.  FRAUD and DECEIT - NEGLIGENT MISREPRESENTATION: "This is not merely a case where the defendants made false representations of matters within their personal knowledge which they had no reasonable grounds for believing to be true. Such acts clearly would constitute actual fraud under CA law. In such situations the defendant believes the representations to be true but is without reasonable grounds for such belief. His liability is based on negligent misrepresentation which has been made a form of actionable deceit. On the contrary, in the instant case, the court found that the defendants did not believe in the truth of the statements. Where a person makes statements which he does not believe to be true, in a reckless manner without knowing whether they are true or false, the element of scienter is satisfied and he is liable for int. misrep.."
(YLC Corp. v. Dare (1963) 216 Cal.App.2d 50, 57 [30 Cal.Rptr. 629])

1    95.   FRAUD and DECEIT - NEGLIGENT MISREPRESENTATION: "'To be

2    actionable deceit, the representation need not be made with knowledge of actual

3    falsity, but need only be an "assertion, as a fact, of that which is not true, by one

4    who has no reasonable ground for believing it to be true" and made "with intent to

5    induce [the recipient] to alter his position to his injury or his risk…'" The

6    elements of negligent misrepresentation also include justifiable reliance on the

7    representation, and resulting damage." (B.L.M. v. Sabo and Deitsch (1997) 55

8    Cal.App.4th 823, 834 [64 Cal.Rptr.2d 335], internal citations omitted.)

9

10    96.   FRAUD and DECEIT - NEGLIGENT MISREPRESENTATION: "As is

11   true of negligence, responsibility for negligent misrepresentation rests upon the

12   existence of a legal duty, imposed by contract, statute or otherwise, owed by a

13   defendant to the injured person. The determination of whether a duty exists is

14   primarily a question of law." (Eddy v. Sharp (1988)  internal citations omitted.)

15

16    97.   FRAUD and DECEIT - NEGLIGENT MISREPRESENTATION:

17   "'"Where the defendant makes false statements, honestly believing that they are

18   true, but without reasonable ground for such belief, he may be liable for negligent

19   misrepresentation, a form of deceit." ' If defendant's belief 'is both honest and

20   reasonable, the misrepresentation is innocent and there is no tort liability.' "

21   (Diediker v. Peelle Financial Corp. (1997) 60 Cal.App.4th 288, 297 [70 Cal.Rptr.

22   2d 442], internal citations omitted.)

23

24    98.   FRAUD and DECEIT - NEGLIGENT MISREPRESENTATION: "Parties

25   cannot read something into a neutral statement in order to justify a claim for

26   negligent misrepresentation. The tort requires a 'positive assertion.' 'An "implied"

27   assertion or representation is not enough.' " (Diediker, supra, 60 Cal.App.4th at

28   pp. 297—298, internal citations omitted.)

99.  FRAUD and DECEIT - NEGLIGENT MISREPRESENTATION:

"Whether a defendant had reasonable ground for believing his or her false statement to be true is ordinarily a question of fact." (Quality Wash Group V, Ltd. v. Hallak (1996) 50 Cal.App.4th 1687, 1696 [58 Cal.Rptr.2d 592], internal citations omitted.)

100.  CONCEALMENT:  "[T]he elements of an action for fraud and deceit based on a concealment are: (1) defendant must have concealed or suppressed a material fact, (2) defendant must have been under a duty to disclose the fact to the plaintiff, (3) defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." (Boschma v. HLC, Inc. (2011))

101.  CONCEALMENT: "There are 'four circumstances in which nondisclosure or concealment may constitute actionable fraud: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts... Each of the [three nonfiduciary] circumstances in which nondisclosure may be actionable presupposes the existence of some other relationship between the plaintiff and defendant in which a duty to disclose can arise... [¶] . . . [S]uch a relationship can only come into being as a result of some sort of transaction between the parties... Thus, a duty to disclose may arise from the relationship between seller and buyer, employer and prospective employee, doctor and patient, or parties entering into any kind of contractual agreement.' All of these

relationships are created by transactions between parties from which a duty to

disclose facts material to the transaction arises under certain circumstances."

(Limandri v. Judkins (1997) 52 Cal.App.4th 326, 336—337 [60 Cal.Rptr.2d 539],

internal citations, italics, and footnote omitted.)

102. CONCEALMENT: "Ordinarily, failure to disclose material facts is not

actionable fraud unless there is some fiduciary relationship giving rise to a duty to

disclose . . . [however,] '[t]he duty to disclose may arise without any confidential

relationship where the defendant alone has knowledge of material facts which are

not accessible to the plaintiff.' " (Magpali v. Farmers Group, Inc. (1996) 48 Cal.

App.4th 471, 482 [55 Cal.Rptr.2d 225], internal citations omitted.)

103. CONCEALMENT: "In transactions which do not involve fiduciary or

confidential relations, a cause of action for non-disclosure of material facts may

arise in at least three instances: (1) the defendant makes representations but does

not disclose facts which materially qualify the facts disclosed, or which render his

disclosure likely to mislead; (2) the facts are known or accessible only to

defendant, and defendant knows they are not known to or reasonably discoverable

by the plaintiff; (3) the defendant actively conceals discovery from the plaintiff."

(Warner Construction Corp. v. City of Los Angeles (1970) 2 Cal.3d 285, 294 [85

Cal.Rptr. 444, 466 P.2d 996], footnotes omitted.)

104. CONCEALMENT: "[A]ctive concealment of facts and mere

nondisclosure of facts may under certain circumstances be actionable without [a

fiduciary or confidential] relationship. For example, a duty to disclose may arise

without a confidential or fiduciary relationship where the defendant, a real estate

agent or broker, alone has knowledge of material facts which are not accessible to

the plaintiff, a buyer of real property." (LJVHA. v. Superior Court (1989) )

105. CONCEALMENT: "Even if a fiduciary relationship is not involved, a non-disclosure claim arises when the defendant makes representations but fails to disclose additional facts which materially qualify the facts disclosed, or which render the disclosure likely to mislead." (Roddenberry v. Roddenberry (1996) 44 Cal.App.4th 634, 666 [51 Cal.Rptr.2d 907], internal citations omitted.)

106. CONCEALMENT: "'[T]he rule has long been settled in this state that although one may be under no duty to speak as to a matter, "if he undertakes to do so, either voluntarily or in response to inquiries, he is bound not only to state truly what he tells but also not to suppress or conceal any facts within his knowledge which materially qualify those stated. If he speaks at all he must make a full and fair disclosure." ' " (Marketing West, Inc. v. Sanyo Fisher (USA) Corp. (1992) 6 Cal.App.4th 603, 613 [7 Cal.Rptr.2d 859].)

107. CONCEALMENT: "Contrary to plaintiffs' assertion, it is not logically impossible to prove reliance on an omission. One need only prove that, had the omitted information been disclosed, one would have been aware of it and behaved differently." (Mirkin v. Wasserman (1993) 5 Cal.4th 1082, 1093 [23 Cal.Rptr.2d 101, 858 P.2d 568].)

108. CONCEALMENT: "The fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced. There is no duty resting upon a citizen to suspect the honesty of those with whom he [or she] transacts business. Laws are made to protect the trusting as well as the suspicious. [T]he rule of caveat emptor should not be relied upon to reward fraud and deception." (Boschma, supra, 198 Cal.App.4th at p. 249, original italics.)

109.   RELIANCE: "It is settled that a plaintiff, to state a cause of action for deceit based on a misrepresentation, must plead that he or she actually relied on the misrepresentation." (Mirkin v. Wasserman (1993) 5 Cal.4th 1082, 1088 [23 Cal.Rptr.2d 101, 858 P.2d 568], internal citations omitted.)  "Reliance exists when the misrepresentation or nondisclosure was an immediate cause of the plaintiff's conduct which altered his or her legal relations, and when without such msirep. or nondisclosure he or she would not, in all reasonable probability, have entered into the contract or other transaction. 'Except in the rare case where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether the plaintiff's reliance is reasonable is a question of fact.' " (Alliance Mortgage Co. v. Rothwell (1995) 10 Cal.4th 1226, 1239 [44 Cal.Rptr.2d 352, 900 P.2d 601])

110.   RELIANCE: "In establishing the reliance element of a cause of action for fraud, it is settled that the alleged fraud need not be the sole cause of a party's reliance. Instead, reliance may be established on the basis of circumstantial evidence showing the alleged fraudulent misrepresentation or concealment substantially influenced the party's choice, even though other influences may have operated as well." (Sangster v. Paetkau (1998) 68 Cal.App.4th 151, 170 [80 Cal.Rptr.2d 66], internal citations omitted.)

111.   RELIANCE: "[A] presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material. A misrepresentation is judged to be 'material' if 'a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question' and as such, materiality is generally a question of fact unless the 'fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it.' " (Engalla v. Permanente Medical Group, Inc. (1997)

112.   FALSE PROMISE: "'"Promissory fraud" is a subspecies of fraud and deceit. A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud. [¶] An action for promissory fraud may lie where a defendant fraudulently induces the plaintiff to enter into a contract.' " (Engalla v. PMG, Inc. (1997) 15 Cal.4th 951, 973—974 [64 Cal.Rptr.2d 843, 938 P.2d 903], internal citations omitted.)

113. FALSE PROMISE: "A promise of future conduct is actionable as fraud only if made without a present intent to perform. 'A declaration of intention, although in the nature of a promise, made in good faith, without intention to deceive, and in the honest expectation that it will be fulfilled, even though it is not carried out, does not constitute a fraud.' Moreover, ' "something more than nonperformance is required to prove the defendant's intent not to perform his promise." . . . [I]f plaintiff adduces no further evidence of fraudulent intent than proof of nonperformance of an oral promise, he will never reach a jury.'" (Magpali v. Farmers Group, Inc. (1996) 48 Cal.App.4th 471, 481 [55 Cal.Rptr.2d 225], internal citations omitted.)

114. FALSE PROMISE: "[I]n order to support a claim of fraud based upon the alleged failure to perform a promise, it must be shown that the promisor did not intend to perform at the time the promise was made." (Conrad v. Bank of America (1996) 45 Cal.App.4th 133, 157 [53 Cal.Rptr.2d 336], citing Tenzer v. Superscope, Inc. (1985) 39 Cal.3d 18, 30 [216 Cal.Rptr. 130, 702 P.2d 212].)

## THIRD CAUSE OF ACTION

( Terrorism/Harassment, Threats, Stalking, Assault )

**(As against Defendant(s):** Facebook, Inc., Apple, Inc., Google, Inc., Twitter, Inc., and John Does 1 to 10 )

115. Plaintiff refers to and incorporates paragraphs 1 through 114, inclusive, as though fully set forth herein, hereat, verbatim.

116. Defendants have put the plaintiff's life in danger on multiple occasions and are suspected of coercing the civil population that is the plaintiff's personal and professional network in attempt to control authority.

117. 18 U.S.C. § 2331 - Terrorism - (5) the term "domestic terrorism" means activities that (A) involve acts dangerous to human life that are a violation of the criminal laws of the United States or of any State; (B) appear to be intended — (i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping; and (C) occur primarily within the territorial jurisdiction of the United States.

118. C.P.C. § 653 - Obscene, Threatening or Annoying Communications - It is illegal to use electronic/phone communications to harass and convey threats.

119. C.P.C. § 646(.9) - Stalking - "Any person who willfully, maliciously, and repeatedly follows or willfully and maliciously harasses another person and who makes a credible threat with the intent to place that person in reasonable fear for his or her safety, or the safety of his or her immediate family is guilty of the crime of stalking, punishable by imprisonment."

120. Plaintiff was sucker punched on Hollywood Blvd., and on two separate occasions, was both strangled and verbally threatened inside of a Hollywood nightclub. There was at least one other incident involving security at a different club being coerced, by conspiring haters, into dragging the plaintiff outside in a chokehold. This was all viewed by known witnesses and is definitely in relation to conspiracy.

121. ASSAULT "'Generally speaking, an assault is a demonstration of an unlawful intent by one person to inflict immediate injury on the person of another then present.' A civil action for assault is based upon an invasion of the right of a person to live without being put in fear of personal harm." (Lowry v. Standard Oil Co. of California (1944) 63 Cal.App.2d 1, 6—7 [146 P.2d 57], internal citation omitted.)

## FOURTH CAUSE OF ACTION

( Espionage: Economic and Personal )

**(As against Defendant(s):** Facebook, Inc., Apple, Inc., Google, Inc., Twitter, Inc., and John Does 1 to 10 )

122. Plaintiff refers to and incorporates paragraphs 1 through 121, inclusive, as though fully set forth herein, hereat, verbatim.

123. Defendants are not just spying on the plaintiff, but they are also using espionage to damage the plaintiff. Conspirators include parties with foreign relations that would gain from defendants getting away with these violations.

124. 18 U.S.C. § 1831 - Economic Espionage Act of 1996 - "a) In General.-- Whoever, intending or knowing that the offense will benefit any foreign government, foreign instrumentality, or foreign agent, knowingly-- (1) steals, or without authorization appropriates, takes, carries away, or conceals, or by fraud, artifice, or deception obtains a trade secret: (2) without authorization copies, duplicates, sketches, draws, photographs, downloads, uploads, alters, destroys, photocopies, replicates, transmits, delivers, sends, mails, communicates, or conveys a trade secret: (3) receives, buys, or possesses a trade secret, knowing the same to have been stolen or appropriated, obtained, or converted without authorization: (4) attempts to commit any offense described in any of paragraphs (1) through (3); or (5) conspires with one or more other persons to commit any offense described in any of paragraphs (1) through (4), and one or more of such persons do any act to effect the object of conspiracy...."

125. Defendants are suspected of stealing and sharing copyrighted intellectual property belonging to the plaintiff.

126. 18 U.S.C. § 1832 - Theft of Trade Secrets - "(a) Whoever, with intent to convert a trade secret, that is related to or included in a product that is produced for or placed in interstate or foreign commerce, to the economic benefit of anyone other than the owner thereof, and intending or knowing that the offense will , injure any owner of that trade secret, knowingly-- (1) steals, or without authorization appropriates, takes, carries away, or conceals, or by fraud, artifice, or deception obtains such information; (2) without authorization copies, duplicates, sketches, draws, photographs, downloads, uploads, alters, destroys, photocopies, replicates, transmits, delivers, sends, mails, communicates, or conveys such information; (3) receives, buys, or possesses such information, knowing the same to have been stolen or appropriated, obtained, or converted without authorization; (4) attempts to commit any offense described in paragraphs (1) through (3); or (5) conspires with one or more other persons to commit any offense described in paragraphs (1) through (3), and one or more of such persons do any act to effect the object of the conspiracy, shall, except as provided in subsection (b), be fined under this title or imprisoned not more than 10 years, or both. (b) Any organization that commits any offense described in subsection (a) shall be fined..."

## FIFTH CAUSE OF ACTION

( Defamation: Slander and Liberal )

**(As against Defendant(s):** Facebook, Inc., Apple, Inc., Google, Inc., Twitter, Inc., and John Does 1 to 10 )

127. Plaintiff refers to and incorporates paragraphs 1 through 126, inclusive, as though fully set forth herein, hereat, verbatim.

128. Plaintiff had long suspected conspirators of slander and libel. Conspirators eventually slipped up in their providing email documented evidence of their fraudulent defamation and interference with perspective business relations.

129. "Defamation is an invasion of the interest in reputation. The tort involves the intentional publication of a statement of fact that is false, unprivileged, and has a natural tendency to injure or which causes special damage." (Smith v. Maldonado (1999) 72 Cal.App.4th 637, 645 [85 Cal.Rptr.2d 397].)

130. Sources: (1) 5 Witkin, Summary of California Law (10th ed. 2005) Torts, §§ 529—555, 615, (2) 4 Levy et al., California Torts, Ch. 45, Defamation, §§ 45.04, 45.13 (Matthew Bender), (3) 30 California Forms of Pleading and Practice, Ch. 340, Libel and Slander, §§ 340.12—340.13 (Matthew Bender), (4) 14 California Points and Authorities, Ch. 142, Libel and Slander (Defamation), §§ 142.20—142.32 (Matthew Bender)

## SIXTH CAUSE OF ACTION

( Interference with Prospective Economic Relations: Unfair Competition )

**(As against Defendant(s):** Facebook, Inc., Apple, Inc., Google, Inc.,

Twitter, Inc., and John Does 1 to 10 )

131. Plaintiff refers to and incorporates paragraphs 1 through 130, inclusive, as though fully set forth herein, hereat, verbatim.

132. Plaintiff claims that defendants are interfering with economic relationships between plaintiff, prospective clients, plaintiff's audience, which probably would have resulted in an economic benefit to plaintiff.

133. C.B.P.C. § 17200-17210 - Unfair Competition - "As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act"

134. Plaintiff brings this cause of action pursuant to the following CAL. BPC. CODE Section 17200 : California Code - Section 17200, in which "Unfair competition" is defined as encompassing any one of the following five types of business "wrongs":  (1) an "unlawful" business act or practice; (2) an "unfair" business act or practice; (3) a "fraudulent" business act or practice; (4) "unfair, deceptive, untrue or misleading advertising"; and (5) any act prohibited by Sections 17500-17577.5.

135. INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS: "The tort of intentional or negligent interference with prospective economic advantage imposes liability for improper methods of disrupting or diverting the business relationship of another which fall outside the boundaries of fair competition." (Settimo Associates v. Environ Systems, Inc. (1993) 14 Cal. App.4th 842, 845 [17 Cal.Rptr.2d 757], internal citation omitted.)

136. INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS: "The tort of interference with prospective economic advantage protects the same interest in stable economic relationships as does the tort of interference with contract, though interference with prospective advantage does not require proof of a legally binding contract. The chief practical distinction between interference with contract and interference with prospective economic advantage is that a broader range of privilege to interfere is recognized when the relationship or economic advantage interfered with is only prospective." (Pacific Gas and Electric Co. v. Bear Stearns and Co. (1990) 50 Cal.3d 1118, 1126 [270 Cal.Rptr. 1, 791 P.2d 587], internal citations omitted.)

137. INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS: "The five elements for intentional interference with prospective economic advantage are: (1) [a]n economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." (Youst v. Longo (1987) 43 Cal.3d 64, 71, fn. 6 [233 Cal. Rptr. 294, 729 P.2d 728].)

138. INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS: "With respect to the third element, a plaintiff must show that the defendant engaged in an independently wrongful act. It is not necessary to prove that the defendant acted with the specific intent, or purpose, of disrupting the plaintiff's prospective economic advantage. Instead, 'it is sufficient for the plaintiff to plead that the defendant "[knew] that the interference is certain or substantially certain to occur as a result of his action." ' '[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard.' '[A]n act must be wrongful by some legal measure, rather than merely a product of an improper, but lawful, purpose or motive.' " (San Jose Construction, Inc. v. S.B.C.C., Inc. (2007) 155 Cal.App.4th 1528, 1544—1545 [67 Cal.Rptr.3d 54], internal citations omitted.)

139. INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS: "[A]n essential element of the tort of intentional interference with prospective business advantage is the existence of a business relationship with which the tortfeasor interfered. Although this need not be a contractual relationship, an existing relationship is required." (Roth v. Rhodes (1994) 25 Cal. App.4th 530, 546 [30 Cal.Rptr.2d 706], internal citations omitted.)

140. INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS: "Although varying language has been used to express this threshold requirement, the cases generally agree it must be reasonably probable that the prospective economic advantage would have been realized but for defendant's interference." (Youst, supra, 43 Cal.3d at p. 71, internal citations omitted.)

1    141. INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC
2    RELATIONS: "[A] plaintiff seeking to recover for an alleged interference with
3    prospective contractual or economic relations must plead and prove as part of its
4    case-in-chief that the defendant not only knowingly interfered with the plaintiff's
5    expectancy, but engaged in conduct that was wrongful by some legal measure
6    other than the fact of interference itself." (Della Penna, supra, 11 Cal.4th at p. 393)
7
8    142. INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC
9    RELATIONS: "Commonly included among improper means are actions which are
10   independently actionable, violations of federal or state law or unethical business
11   practices, e.g., violence, misrepresentation, unfounded litigation, defamation, trade
12   libel or trade mark infringement." (PMC, Inc., supra, 45 Cal.App.4th at p. 603)
13
14   143. INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC
15   RELATIONS: "[O]ur focus for determining the wrongfulness of those intentional
16   acts should be on the defendant's objective conduct, and evidence of motive or
17   other subjective states of mind is relevant only to illuminating the nature of that
18   conduct." (Arntz Contracting Co., supra, 47 Cal.App.4th at p. 477.)
19
20   144. INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC
21   RELATIONS: "[I]n the absence of other evidence, timing alone may be sufficient
22   to prove causation … Thus, . . . the real issue is whether, in the circumstances of
23   the case, the proximity of the alleged cause and effect tends to demonstrate some
24   relevant connection. If it does, then the issue is one for the fact finder to decide."
25   (Overhill Farms, Inc. v. Lopez (2010) 190 Cal.App.4th 1248, 1267 [119 Cal.Rptr.
26   3d 127], original italics.) There are other privileges that a defendant could assert
27   in appropriate cases, such as the "manager's privilege". (Halvorsen v. AUSces, Inc.
28   (1998) 65 Cal.App.4th 1383, 1391—1392 [77 Cal.Rptr.2d 383].)

## SEVENTH CAUSE OF ACTION

( Intentional Infliction fo Emotional Distress )

**(As against Defendant(s):** Facebook, Inc., Apple, Inc., Google, Inc., Twitter, Inc., and John Does 1 to 10 )

145. Plaintiff refers to and incorporates paragraphs 1 through 144, inclusive, as though fully set forth herein, hereat, verbatim.

146. Defendants were verifiably made aware of the problems they are causing. Defendants refuse to communicate with plaintiff, therefore forcing this extreme action, which is outrageous. Defendants were informed of how important their actions (or lack thereof) are to the plaintiff, and are displaying intentionally reckless disregard for the probability of causing emotional distress. Defendants have caused, whether indirectly or by coercion, information to be publicized by plaintiff, in regards to both timing of a publicly advertised launch, which has been expected by a large audience and delayed for years, to become false, thus causing defamation, humiliation, and indignity of the plaintiff, and also in regards to information about this case, which must be recognized or the plaintiff will most definitely face further irreperable damages. The coerced self-publishing, which plaintiff has kept as low key as possible, has already resulted in further harassment of the plaintiff by conspiring defendants. Plaintiff has incurred and will continue to incur damages as a result. It should not take a shrink to prove that any person, especially one with an exceptionally high emotional IQ, is bound to be effected by the repetetive and malicious attacks reported by the plaintiff. The plaintiff is stable and this legal plead should demonstrate that a rational and head strong man knows how to deal with his problems, but that does not mean they do not exist, and the only support necessary is the relief, which has been requested herein.

147. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS: "A cause of action for intentional infliction of emotional distress exists when there is '(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.' A defendant's conduct is 'outrageous' when it is so 'extreme as to exceed all bounds of that usually tolerated in a civilized community.' And the defendant's conduct must be 'intended to inflict injury or engaged in with the realization that injury will result.'" (Hughes v. Pair (2009) 46 Cal.4th 1035, 1050—1051 [95 Cal.Rptr.3d 636, 209 P.3d 963])

148. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS: " '[I]t is generally held that there can be no recovery for mere profanity, obscenity, or abuse, without circumstances of aggravation, or for insults, indignities or threats which are considered to amount to nothing more than mere annoyances.' " (Yurick v. Superior Court (1989) 209 Cal.App.3d 1116, 1128 [257 Cal.Rptr. 665], internal citations omitted.)

149. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS: "It is not enough that the conduct be intentional and outrageous. It must be conduct directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware." (Christensen v. Superior Court (1991) 54 Cal.3d 868, 903—904 [2 Cal.Rptr.2d 79, 820 P.2d 181].)

150. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS: "Severe emotional distress [is] emotional distress of such substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it." (Fletcher v. Western Life Insurance Co. (1970) 10 Cal.App.3d 376, 397 [89 Cal.Rptr. 78].)

151. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS: " 'It is for the court to determine whether on the evidence severe emotional distress can be found; it is for the jury to determine whether, on the evidence, it has in fact existed.' " (Fletcher, supra, 10 Cal.App.3d at p. 397, internal citation omitted.)

152. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS: " 'The law limits claims of intentional infliction of emotional distress to egregious conduct toward plaintiff proximately caused by defendant.' The only exception to this rule is that recognized when the defendant is aware, but acts with reckless disregard of, the plaintiff and the probability that his or her conduct will cause severe emotional distress to that plaintiff. Where reckless disregard of the plaintiff's interests is the theory of recovery, the presence of the plaintiff at the time the outrageous conduct occurs is recognized as the element establishing a higher degree of culpability which, in turn, justifies recovery of greater damages by a broader group of plaintiffs than allowed on a negligent infliction of emotional distress theory." (Christensen, supra, 54 Cal.3d at pp. 905—906, internal citations omitted.)

### EIGHTH CAUSE OF ACTION
( Obstruction of Justice )

**(As against Defendant(s):** Facebook, Inc., Apple, Inc., Google, Inc.,
Twitter, Inc., and John Does 1 to 10 )

153. Plaintiff refers to and incorporates paragraphs 1 through 152, inclusive, as though fully set forth herein, hereat, verbatim.

154. Defendants have been obstructing the due course of justice in conjunctions with the aforementioned violations.

155. 42 U.S.C. § 1985 - Conspiracy To Interfere With Civil Rights - "(2) Obstructing justice; intimidating party, witness, or juror; If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully…or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;"

## NINTH CAUSE OF ACTION

( Civil Conspiracy to Commit Crimes Against Plaintiff, Ongoing )

**(As against Defendant(s):** Facebook, Inc., Apple, Inc., Google, Inc., Twitter, Inc., and John Does 1 to 10 )

156. Plaintiff refers to and incorporates paragraphs 1 through 155, inclusive, as though fully set forth herein, hereat, verbatim.

157. Plaintiff accuses defendants of conspiring, at least on some level, to commit all crimes mentioned in paragraphs 1 through 156, which have resulted in damages to the plaintiff.

158. CIVIL CONSPIRACY: Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration. By participation in a civil conspiracy, a oconspirator effectively adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy. In this way, a coconspirator incurs tort liability co-equal with the immediate tortfeasors." (Applied Equipment Corp. v. Litton Saudi Arabia Ltd. (1994) 7 Cal.4th 503, 510-511 [28 Cal.Rptr.2d 475, 869 P.2d 454]

159. CIVIL CONSPIRACY: "While criminal conspiracies involve distinct substantive wrongs, civil conspiracies do not involve separate torts. The doctrine provides a remedial measure for affixing liability to all persons who have 'agreed to a common design to commit a wrong.' " (Choate v. County of Orange (2000) 86 Cal.App.4th 312, 333 [103 Cal.Rptr.2d 339])

160. CIVIL CONSPIRACY: "As long as two or more persons agree to perform a wrongful act, the law places civil liability for the resulting damages on all of them, regardless of whether they actually commit the tort themselves. 'The effect of charging . . . conspiratorial conduct is to implicate all . . . who agree to the plan to commit the wrong as well as those who actually carry it out.' " (Wyatt v. Union Mortgage Co. (1979) 24 Cal.3d 773, 784 [157 Cal.Rptr. 392, 598 P.2d 45], internal citations omitted.)

161. CIVIL CONSPIRACY: "The elements of a civil conspiracy are '(1) the formation and operation of the conspiracy; (2) the wrongful act or acts done pursuant thereto; and (3) the damage resulting.' " (Mosier v. Southern California Physicians Insurance Exchange (1998) 63 Cal.App.4th 1022, 1048 [74 Cal.Rptr. 2d 550], internal citations omitted.)

162. CIVIL CONSPIRACY: " '[T]he major significance of the conspiracy lies in the fact that it renders each participant in the wrongful act responsible as a joint tortfeasor for all damages ensuing from the wrong, irrespective of whether or not he was a direct actor and regardless of the degree of his activity.' " (Applied Equipment Corp., supra, 7 Cal.4th at p. 511, internal citations omitted.)

163. CIVIL CONSPIRACY: "A complaint for civil conspiracy states a cause of action only when it alleges the commission of a civil wrong that causes damage. Though conspiracy may render additional parties liable for the wrong, the conspiracy itself is not actionable without a wrong." (Okun v. Superior Court (1981) 29 Cal.3d 442, 454 [175 Cal.Rptr. 157, 629 P.2d 1369].)

1    164. CIVIL CONSPIRACY: "Conspiracy is not an independent tort; it cannot

2    create a duty or abrogate an immunity. It allows tort recovery only against a party

3    who already owes the duty and is not immune from liability based on applicable

4    substantive tort law principles." (Applied Equipment Corp., supra, 7 Cal.4th at p.

5    514, internal citations omitted.)

6

7    165. CIVIL CONSPIRACY: "A conspiracy cannot be alleged as a tort separate

8    from the underlying wrong it is organized to achieve. As long as the underlying

9    wrongs are subject to privilege, defendants cannot be held liable for a conspiracy

10   to commit those wrongs. Acting in concert with others does not destroy the

11   immunity of defendants." (McMartin v. Children's Institute International (1989)

12   212 Cal.App.3d 1393, 1406 [261 Cal.Rptr. 437], internal citations omitted.)

13

14   166. CIVIL CONSPIRACY: "We agree . . . that the general rule is that a party

15   who is not personally bound by the duty violated may not be held liable for civil

16   conspiracy even though it may have participated in the agreement underlying the

17   injury. However, an exception to this rule exists when the participant acts in

18   furtherance of its own financial gain." (Mosier, supra, 63 Cal.App.4th at p. 1048,

19   internal citations omitted.)

20

21   167. CIVIL CONSPIRACY: "Conspiracy liability may properly be imposed

22   on nonfiduciary agents or attorneys for conduct which they carry out not simply

23   as agents or employees of fiduciary defendants, but in furtherance of their own

24   financial gain." (Skarbrevik v. Cohen, England and Whitfield (1991) 231

25   Cal.App.3d 692, 709 [282 Cal.Rptr. 627], internal citations omitted.)

26

27

28